## UPHAM GAS CO. OF TEXAS v. AGNEW et al. (No. 10994.)

(Court of Civil Appeals of Texas. Fort Worth. March 7, 1925.)

1. **Mines and minerals ⬥109—Contract held to preclude contractor from recovering profits which would have been earned by drilling to agreed depth.**

Where by well drilling contract defendant agreed to furnish gas to contractor for fuel, but reserved right to stop drilling at any depth desired, and defendant did discontinue operations at a depth less than agreed depth, profits that contractor would have earned by drilling to agreed depth which it could have done, but for defendant's failure to furnish fuel, *held* not recoverable in absence of showing that contractor would have been permitted to drill to agreed depth if there had been no shortage of fuel.

2. **Trial ⬥352(1)—Special issue improper because ambiguous as to whether it called for damages not recoverable.**

In well drilling contractor's action for owner's breach of agreement to furnish fuel, special issue as to amount plaintiff would have earned if furnished sufficient fuel *held* improper because ambiguous as to whether it called for profits plaintiff would have made by drilling to greater depth claimed in one count, but not properly recoverable.

3. **Trial ⬥351(2)—Failure, in case submitted on special issues, to request submission of issue waives such issue.**

A failure, in a case submitted to the jury on special issues, to request submission of an issue tendered as the basis for recovery, or as defense, waives such issue.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by B. L. Agnew and others against the Upham Gas Company of Texas. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Penix, Miller & Perkins, of Mineral Wells, for appellant.

Gross & Zivley, of Mineral Wells, for appellees.

DUNKLIN, J. The Upham Gas Company, who owned an oil and gas lease on a tract of land in Palo Pinto county, employed the partnership firm of B. L. Agnew & Co. to drill an oil well on that lease. The contract of employment was in writing and executed by both parties. By its terms the Upham Gas Company, who was designated in the contract as "the company," agreed to furnish to B. L. Agnew & Co., designated in the contract as "the contractor," gas for fuel to be used by the contractor in the drilling of the well. It contained, among others, these further provisions:

"Said well, unless sooner discontinued by direction of the company, is to be drilled to a depth of 3,800 feet, the consideration per foot to be $2.62½. * * *

"The company agrees to pay at the rate of $75 (or $40 for 12 hours) per day of 24 hours, for time occupied in testing of sands and pulling such casing as may be done at the direction of the company. * * *

"In the drilling of said well the obligations of the company shall be limited exclusively to the things herein stipulated by it to be done and performed. All other expense shall be borne by the contractor."

The contract was dated April 5, 1923.

On June 29, 1923, the well had been drilled to a depth of 2,138 feet. The contract price of $2.62½ per foot, amounting to a total of $5,612.55, was tendered to the contractor on August 6, 1923, at which time the company notified the contractor that it had decided to exercise its option to discontinue the drilling. The depth of 2,138 feet was reached by the contractor on June 29, 1923, and after that date no further drilling was done.

The contractor refused to accept the amount so tendered by the company in full satisfaction of what the company owed under the contract. The claim was made that the company had breached its contract to furnish gas for fuel to prosecute the drilling of the well in a workmanlike manner, and that by reason thereof the contractor had sustained damages occasioned by unnecessary delays in drilling.

The contractor then instituted this suit against the company to recover $5,612.55, the contract price for drilling the well to a depth of 2,138 feet, and also for damages for the defendant's alleged breach of its contract to furnish gas for fuel in the amount

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

required to enable him to drill the well without delays occasioned by a shortage of such fuel.

There were three counts in plaintiffs' petition, in each of which plaintiffs asserted a right to recover such damages. In the first of those counts it was alleged that, on account of a lack of sufficient fuel gas the drilling operations had been suspended entirely for several days, the dates being given, and that but for such delays plaintiffs would have drilled the well to a depth of 3,800 feet in the same period of time that was consumed in drilling to the depth of 2,138 feet, it being alleged that by reason of the formation of the earth and decreased size of the hole greater speed would have been made below the depth of 2,138 feet, and that therefore plaintiffs would have earned $4,362.75 at the rate of $2.62½ per foot, in addition to the sum of $5,612.55, which the defendant admitted it owed and tendered.

In another count in the petition it was alleged that for lack of sufficient fuel gas drilling operations were shut down for a period of 46½ days of 24 hours each, during all of which time his drilling crew, which he had employed, to work, was idle, and that the defendant became liable to the plaintiffs for the reasonable value of such shut down time, which was alleged to be $75 per day, or in the aggregate of $3,487.50.

In another count in the petition plaintiffs alleged that the time actually consumed was 43½ days, but that, if defendant had furnished sufficient fuel gas, the well would have been drilled to that depth in 22 days, and that therefore plaintiffs lost 68 days of time with its machinery, tools, and drilling crew, which time so lost was of the reasonable value of $5,100, and that amount was claimed as damages for the breach of defendant's contract. However, that count in the petition fails to state at what date the 68 days of time so lost would have ended; whether on August 6th, at the time the defendant notified the plaintiffs that it had elected to terminate drilling operations, or whether the 68 days was the period of time within which the well would have been drilled to a depth of 3,800 feet.

Plaintiffs further sought to recover another item of $40 for fuel, casing, and testing the well, requiring the work of 12 hours, delays for which defendant was liable under a further provision in the contract that it would pay at the rate of $75 per day or $40 for 12 hours for such work. Another item of $40 was claimed for a 12 hour shut down in drilling operations due to the failure of defendant to furnish a drilling rig properly equipped as it had agreed to do.

In answer to plaintiffs' suit the defendant, in addition to a general denial, pleaded specially that the fuel gas furnished by it to the plaintiffs was in quantities sufficient to have drilled the well without any delays for lack thereof if it had been economically used, but that plaintiffs had been guilty of negligent waste of it, and by reason of that fact the delays complained of had occurred. Defendant further pleaded that the machinery and appliances employed by plaintiffs to drill the well and which they had agreed to furnish were not in proper repair, and by reason of that fact more gas was used than was necessary; and, further, that the well was drilled in an improper manner as a result of which there was an obstruction left in the well when it was turned over to the defendant, by reason of which obstruction the defendant was damaged in the sum of $300.

The trial was upon special issues submitted to the jury, which issues, together with the jury's findings thereon, were in substance as follows:

(1) Whether or not the defendant furnished plaintiffs with an adequate supply of gas to drill the well with reasonable dispatch, if economically used? The jury made a negative finding on that issue.

(2) What sum of money paid now, if anything, in addition to the contract price of $2.62½ per foot for the drilling of 2,138 feet in the well in question, and over and above the necessary expense of performing and fulfilling the contract in evidence, prior to August 5, 1923, would plaintiffs have earned had they been furnished with sufficient gas for fuel to drill said well with dispatch, if they were so furnished? The finding of the jury on that issue was $1,300.

(3) Was there a defect· or obstruction in the well in question when it was turned over to the defendant by· plaintiffs? To which the jury answered, "No."

Upon the return of the verdict, the court entered a judgment in favor of plaintiffs against the defendant for $6,952.75, which included the item of $5,612.25, the amount which defendant had tendered to the plaintiffs, the same being the contract price for the 2,138 feet actually drilled; also the sum of $40 for fuel gas, and the item of $1,300 found by the jury.

Numerous objections were urged to special issue No. 2 before the court submitted the same to the jury. One of the objections to the issue was that it did not submit the proper measure of damages; another that there is no proper pleading by the plaintiffs which would warrant a submission of that issue: and another was that, according to the undisputed testimony of plaintiffs themselves, all drilling operations ceased on June 29th, and were not thereafter resumed, and that, since, according to plaintiffs' own proof, the contract was breached on June 29th, damages occurring from that date to August 5th could not be recovered.

It is impossible to determine which par-

ticular count in plaintiffs' petition the trial judge intended issue No. 2 to cover. As shown above, according to allegations in one count for the shortage of fuel, plaintiffs could have drilled the well to a depth of 3,800 feet by August 5th, when defendant ordered the drilling to cease, and that plaintiffs were entitled to $4,362.75 damages under that count. According to another count plaintiffs would have drilled the 2,138 feet in 22 days if a sufficient amount of fuel gas had been furnished them, and by reason of such failure plaintiffs were damaged in the sum of $3,487.50. Furthermore, there is no specific allegation of the amount of expenses actually incurred by the plaintiffs for labor up to August 5th. One of the plaintiffs testified as a witness that they could have drilled the well 3,800 feet in the same period of time that was employed in drilling the 2,138 feet and at the same expense, and that plaintiffs would have made $4,300 more than they did make in drilling it at 2,138 feet, figured on a basis of the contract price per foot.

[1] If the jury's finding in answer to special issue No. 2 was the profits plaintiffs would have earned by drilling to a depth of 3,800 feet, then such a finding could not be made the proper basis of a recovery, in view of the fact that under the terms of the written contract defendant had the right to stop all drilling operations at any depth it desired, and there is no proof in the record that, even if plaintiffs had not been delayed by a lack of fuel, they would have been permitted to drill the well to a depth of 3,800 feet.

[2, 3] For lack of clarity in issue No. 2 with respect to the matters above mentioned, and since it is impossible to determine upon what theory the jury allowed $1,300 damages in answer to that issue, and since it is just as probable that those damages were allowed upon the first count in the petition, mentioned above, as upon the third, the judgment must be reversed. S. K. Ry. Co. v. Sage, 98 Tex. 438, 84 S. W. 814; Weisner v. M. K. & T. Ry. (Tex. Com. App.) 207 S. W. 904; Peden Iron Works v. Jaimes (Tex. Com. App.) 208 S. W. 898; Hines v. Walker, by this court, 225 S. W. 837, writ of error refused by Supreme Court. And in this connection we deem it proper to call attention to the decisions of our Supreme Court in G. H. & S. A. Ry. Co. v. Price (Tex. Com. App.) 240 S. W. 524; Texas City Transp. Co. v. Winters (Tex. Com. App.) 222 S. W. 541; Public Service Co. v. Tracy (Tex. Civ. App.) 221 S. W. 637, in which the rule is announced that, when a case is submitted to a jury on special issues, an issue not submitted and not requested to be submitted is considered as waived by the party who tendered the issue as a basis for a recovery or for a defense to the action. This suggestion is made in view of the fact that no issue was submitted or requested as to the amount of expenses incurred by plaintiffs for labor during the time drilling operations were suspended for a lack of fuel, the claim for such wages being asserted in some of the counts in the petition, and the issue submitted by the court relating to profits only over and above the necessary drilling expenses.

For the reasons noted, the judgment is reversed and the cause is remanded.